EFILED IN OFFICE
CLERK OF SUPERIOR COURT
FAYETTE COUNTY, GEORGIA
2025V-1230
RHONDA B KREUZIGER
DEC 23, 2025 12:44 PM
Sheila Studdard, Clerk
Fayette County, Georgia

**IN THE SUPERIOR COURT OF FAYETTE COUNTY
STATE OF GEORGIA**

| | |
|---|---|
| **TROPHY POINT INVESTMENT GROUP, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**KELLY KATHARINE TAYLOR AND ROBERT KEITH TAYLOR,**<br><br>**Defendants.** | **Civil Action**<br><br>**File No. ______________** |

## COMPLAINT ON GUARANTY AGREEMENTS

Trophy Point Investment Group, LLC ("Plaintiff") states the following Complaint against Defendants Kelly Katharine Taylor ("K. Taylor") and Robert Keith Taylor ("R. Taylor") (K. Taylor and R. Taylor are collectively referred to herein as the "Defendants"):

### IDENTIFICATION OF THE PARTIES

1. Plaintiff is a Georgia limited liability company. Plaintiff's principal office address is located at 210 Trilith Pkwy, Suite 100, Fayetteville, Fayette County, Georgia 30214.

2. Defendant Kelly Katharine Taylor is a resident of California and may be served with process at 12561 E Sussex Way, Sanger, California 93657.

3. Defendant Robert Keith Taylor is a resident of California and may be served with process at 12561 E Sussex Way, Sanger, California 93657.

### STATEMENT OF JURISDICTION AND VENUE

4. This Court has personal jurisdiction over all Defendants.

5. This Court has jurisdiction over the subject matter of this action.

6. Both of the Guaranty Agreements (as defined below) state that "the state and federal courts and authorities with jurisdiction in Georgia shall have exclusive jurisdiction over

all controversies that arise under or in relation to this Guaranty or any other Loan Document with respect to the subject matter hereof." Further, both of the Guaranty Agreements state that each Defendant "irrevocably consents to service, jurisdiction and venue of such courts for any such litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise."

7. The Court has long-arm jurisdiction over Defendants because of their transaction of business within Georgia. More specifically, Defendants transacted business by obtaining & personally guaranteeing the loan from Plaintiff in the State of Georgia and Defendants' involvement in the transaction of business in Georgia related to and associated with the Property (as defined below) and Borrower. Without limitation, Defendant K. Taylor served as the sole member and representative of TPG Venture Holdings, LLC ("Borrower") with respect to all matters set forth in this Complaint. Therefore, Defendants have transacted business in the State of Georgia for the purposes of this action.

8. Defendants are subject to venue and jurisdiction in Fayette County because they transacted business in Fayette County.

9. Under Georgia law, venue is proper as to Defendants in Fayette County, Georgia because jurisdiction and venue can be obtained over Defendants in Fayette County.

## STATEMENT OF FACTS

10. On or about December 13, 2024, Borrower executed and delivered to Plaintiff a promissory Note (the "Note") in the principal amount of $720,000.00. A true and correct copy of the Note is attached hereto and incorporated herein by this reference as **Exhibit A**.

11. Also on December 13, 2024, Borrower executed and delivered to Plaintiff that certain "Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing"

recorded with the Recorder of Deeds of Macon County, Illinois and being instrument number 2024R-012236 (the "Security Deed"), whereby Borrower conveyed a security interest in certain real property located in Macon County, Illinois (the "Property"), as security for the Note.

12. Also on December 13, 2024, K. Taylor executed and delivered to Plaintiff a Guaranty (the "K. Taylor Guaranty") whereby K. Taylor irrevocably and unconditionally guaranteed the due and punctual performance and payment to Plaintiff of all debt owed under the Note. A true and correct copy of the K. Taylor Guaranty is attached hereto and incorporated herein by this reference as **Exhibit B**.

13. Also on December 13, 2024, R. Taylor executed and delivered to Plaintiff a Guaranty (the "R. Taylor Guaranty") (the K. Taylor Guaranty and R. Taylor Guaranty are collectively referred to herein as the "Guaranty Agreements") (the Note, Security Deed, and Guaranty Agreements, and any and all other documents or instruments relating to the same, and any modification or amendment thereto, are collectively referred to herein as the "Loan Documents") whereby R. Taylor irrevocably and unconditionally guaranteed the due and punctual performance and payment to Plaintiff of all debt owed under the Note. A true and correct copy of the R. Taylor Guaranty is attached hereto and incorporated herein by this reference as **Exhibit C**.

14. Borrower defaulted on its obligations under the Note by failing to make payments when due as required under the Loan Documents.

15. The Note remains in default, and the Note matured on or about June 13, 2025.

16. Defendants are in default under the Guaranty Agreements for failure to pay the Note debt as required under the Guaranty Agreements.

17. As of the date of filing this Complaint, Defendants remain indebted to Plaintiff pursuant to the Guaranty Agreements, by reason of default, for the principal sum of $720,000.00; plus interest through December 19, 2025, in the amount of $81,926.92; plus additional interest at the rate of $239.80 per diem from said date to the date of payment; plus late fees in the amount of $7,553.70; plus other fees chargeable under the Loan Documents in the amount of $1,290.00; and plus additional fees and costs as the same may accrue (the total of which is referred to as the "Guaranty Debt").

**COUNT ONE**
**BREACH OF GUARANTY (KELLY TAYLOR)**

18. Defendant K. Taylor breached her contractual obligations under the K. Taylor Guaranty and the Loan Documents by failing to pay all amounts due to Plaintiff following Borrower's default.

19. Plaintiff is therefore entitled to judgment against Defendant K. Taylor in the amount of $810,770.62 as of December 19, 2025, plus additional interest thereafter at the rate of $239.80 per diem from said date to the date of payment.

**COUNT TWO**
**BREACH OF GUARANTY (ROBERT TAYLOR)**

20. Defendant R. Taylor breached his contractual obligations under the R. Taylor Guaranty and the Loan Documents by failing to pay all amounts due to Plaintiff following Borrower's default.

21. Plaintiff is therefore entitled to judgment against Defendant R. Taylor in the amount of $810,770.62 as of December 19, 2025, plus additional interest thereafter at the rate of $239.80 per diem from said date to the date of payment.

## COUNT THREE
## ATTORNEY'S FEES (ALL DEFENDANTS)

22. Defendants are liable to Plaintiff for the Guaranty Debt due under the Loan Documents based on their respective guaranties of the Note.

23. The Guaranty Agreements and other Loan Documents provide for the payment of attorney's fees. Plaintiff is entitled to contractual attorneys' fees pursuant to O.C.G.A. § 13-1-11. Pursuant to the terms of the Guaranty Agreements, other Loan Documents and Georgia law, the Defendants are advised that they have ten (10) days from date of service of this Complaint to pay the principal and accrued interest due under the contracts described herein, or Defendants will be jointly and severally liable to Plaintiff for contractual attorneys' fees in the amount of fifteen percent (15%) of principal and interest owing on the first $500.00 and ten percent (10%) thereafter of the amounts due and owing under the Guaranty Agreements and other Loan Documents.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following:

(a) That Summons issue as provided by law;

(b) That Plaintiff be awarded a judgment against Defendants, jointly and severally, in the amounts stated in Paragraph 17 above;

(c) That Plaintiff be awarded attorney's fees, plus court costs and expenses of litigation; and

(d) That the Court grant such other and further relief as it may deem just and proper.

**JONES & WALDEN LLC**
*/s/ Leslie M. Pineyro*
Leslie M. Pineyro
Georgia Bar No. 969800
699 Piedmont Avenue, NE, Atlanta, Georgia 30308
(404) 564-9300 | LPineyro@joneswalden.com
*Attorney for Plaintiff*

# Exhibit "A"

# NOTE

$720,000.00 Tucker, GA

**PROPERTY ADDRESS: 511 E Olive St Decatur IL 62526 1605 Walnut Grove Ave, Decatur, MACON, IL 62526 2121 W Waggoner St, Decatur, MACON, IL 62526 1057 W Howard St, Decatur, MACON, IL 62522 1645 N Monroe St, Decatur, MACON, IL 62526 1408 E Olive St, Decatur, MACON, IL 62526 645 W Sawyer St, Decatur, MACON, IL 62526 1565 N Wilson Ave, Decatur, MACON, IL 62526 1023 S Silas St, Decatur, MACON, IL 62521 913 W View St, Decatur, MACON, IL 62522 1201 W King St, Decatur, MACON, IL 62522 1075 S Silas St, Decatur, MACON, IL 62521 825 E Lincoln Ave, Decatur, MACON, IL 62521 1404 E Cantrell St, Decatur, MACON, IL 62521 1789 N Lowber St, Decatur, MACON, IL 62526 2002 N College St, Decatur, MACON, IL 62526 545 S 19th St, Decatur, MACON, IL 62521 443 E Olive St, Decatur, MACON, IL 62526 450 E Olive St, Decatur, MACON, IL 62526 451 E Olive St, Decatur, MACON, IL 62526 1420 E Division St, Decatur, MACON, IL 62526 1854 N Maple Ave, Decatur, MACON, IL 62526 527 E Olive St, Decatur, MACON, IL 62526 263 E Olive St, Decatur, MACON, IL 62526 1173 E Harrison Ave, Decatur, MACON, IL 62526**

DEFINITIONS

In addition to the capitalized terms defined where used, words used in multiple sections of this Note and/or the corresponding Loan Documents are defined below.

1. "**Borrower**" is TPG Venture Holdings, LLC, a Wyoming Limited Liability Company. Borrower is the Mortgagor under the Security Instrument(s) (as hereinafter defined).
2. "**Lender**" is TROPHY POINT INVESTMENT GROUP, a Georgia limited liability company, its successors and assigns. Lender's address is 6608 Brynhurst Drive Northwest, Tucker, GA 30084. Lender is the grantee under the Security Instrument(s).
3. "**Loan**" means the debt evidenced by the Note (as hereinafter defined), plus interest, any prepayment charges and late charges due under the Note, and all sums due under the Security Instrument(s).
4. "**Loan Documents**" means collectively the Loan Agreement (as hereinafter defined), Note, Security Instrument(s) and all other documents executed and/or delivered in connection with the Loan.
5. "**Note**" means this promissory note signed by Borrower and dated December 13, 2024. This Note states that Borrower owes Lender SEVEN HUNDRED AND TWENTY THOUSAND and 0/100 Dollars (U.S. $720,000.00) and any additional amounts advanced pursuant to the Loan Documents, plus interest. Borrower has promised to pay this debt in regular monthly payments and to pay the debt in full not later than June 13, 2025 (the "**Maturity Date**").

## 1. BORROWER'S PROMISE TO PAY

In return for a construction loan that I have received, I promise to pay in the maximum principal amount of up to U.S. $720,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender, and so much thereof as is advanced for protective or future advances pursuant to the Loan Documents. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal, including protective or future advances as is advanced pursuant to the Loan Documents, until the full amount of such unpaid principal has been paid. I will pay interest at a yearly rate of 11.99%, computed on the basis of a three hundred sixty (360) day year consisting of twelve (12) thirty (30) day months. Interest commences on the day the lender's funds are placed in escrow. I will pay interest on the full amount of the unpaid principal of this Note even though the Lender may hold some of my cash or other property as collateral for repayment and even if I have prepaid payments in accordance with paragraph 3(A). For the avoidance of doubt, I understand that interest will accrue on the entire principal balance of the Loan, including portions of the Loan not yet advanced by Lender. The foregoing interest accrual method is commonly known as "Dutch Interest."

The interest rate required by this Section 2 is the rate I will pay before any default. If I default, the above rate shall, at the option of Lender without notice, increase to 18.000 % or the maximum rate permitted under law, whichever is greater, and remain at that rate until all defaults are fully cured (the "Default Rate"). Lender and I agree that the Default Rate has been duly and adequately negotiated, and is fair and reasonable considering the costs, burdens, and other impairments foreseeably caused by, or resulting from, events of default under the Loan Documents.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay all interest on this Note from the date of funding through the end of that month at loan closing. Thereafter I will make monthly payments on the first day of each month during the term of this Note starting with the "First Payment Date" of February 1, 2025. If, on the Maturity Date, I still owe amounts under this Note, I will pay those amounts in full on that date. In addition to the monthly payment, if required by the Lender, Borrower shall deposit with Lender, on a monthly basis, an amount equal to one-twelfth (1/12) of the taxes and/or insurance (the "Monthly Escrow Deposit") that Lender estimates will be payable during the next ensuing twelve (12) months.

I will make my monthly payments payable to TROPHY POINT INVESTMENT GROUP, LLC at 6608 Brynhurst Drive Northwest, Tucker, GA 30084 or at a different place if required by the Note Holder. I agree to accept payment billings by email.

If I have prepaid payments when the loan was funded, Lender may retain those payments as earned in full and Lender will note in its records that the period covered by the prepaid payments has been paid as agreed. Prepaid payments shall not be applied to principal. If I repay the loan within this period, any unused prepaid funds will be credited on the payoff.

**(B) Amount of Monthly Payments**

My monthly interest payment ("Monthly Interest Payment") will be in the amount of U.S. $7,194.00. Borrower shall pay to Lender together with each payment of interest under the Note, all Loan Servicing Fees which shall be computed based on the average daily outstanding principal balance of the Loan for the previous calendar month or portion thereof.

**(C) Application of Payments.**

At Lender's sole discretion, my payments under this Note will be applied first to any late charges, fees or penalties then due, next to interest due and finally to unpaid principal. A payment will be deemed made when received at the payment address in subparagraph (A) above or at such other payment address as the Note Holder may designate from time to time.

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due subject to the Prepayment Premium (as hereinafter defined), if applicable. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note. I may only make one Prepayment of Principal per month.

This is an open mortgage, and may be prepaid in full or in part upon 30 days written notice and upon full payment of all accrued interest and other amounts owing to the Lender. On the date on which a Prepayment, voluntary or mandatory, is made (including any amounts collected by Note Holder after a default), I shall pay to Note Holder (A) all accrued and unpaid interest on the amount of Principal being prepaid through and including the date of such Prepayment and (B) and any prepayment premium due in accordance with this paragraph, only to the extent allowed by applicable law (the "Prepayment Premium").

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of three (3) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the late charge will be fifteen percent (15.00%) of my

overdue payment of principal and interest or two-hundred dollars ($200), whichever is more and I agree that such charge is a reasonable estimate of the fair compensation for the loss and damages that Note Holder will suffer for such late payment. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due or the amount due on the Maturity Date, I will be in default, and an "Event of Default" will be deemed to have occurred hereunder.

**(C) Notice of Default and Acceleration**

If I am in default and such default is then continuing, the full amount of Principal which has not been paid, any accrued interest, all other amounts payable under this Note and any other Loan Documents, shall at once become due and payable, at the option of the Note Holder, without any prior notice to me (except if notice is required by applicable law or the Security Instrument, then after such notice).

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time. All remedies afforded to the Note Holder shall be cumulative.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, but are not limited to, reasonable attorneys' fees, inspection fees, appraisal fees, returned check fees and other out of pocket costs.

**(F) Cross-Default**

Any default under the terms of any loan agreement, promissory note, deed of trust, mortgage, lease,conditional sale contract or other agreement, document or instrument evidencing, governing or securing any indebtedness owing by Borrower or any affiliate of Borrower to Lender or any affiliate of Lender; shall, at Lender's option, constitute a default under this Note..

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at 5830 E 2nd St Ste 7000 #17625 Casper, WY 82609 or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment, Notice of Dishonor and Protest. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid. "Protest" means the right to obtain an official certification of nonpayment.

I AGREE THAT LENDER'S WILLINGNESS TO OFFER TO ME THE INTEREST RATE DESCRIBED ABOVE IS SUFFICIENT AND INDEPENDENT CONSIDERATION, GIVEN INDIVIDUAL WEIGHT BY LENDER, FOR THIS WAIVER. I FURTHER UNDERSTAND THAT LENDER WOULD NOT OFFER SUCH AN INTEREST RATE TO ME ABSENT THIS WAIVER.

I acknowledge that prepayment of this Note may result in Note Holder's incurring additional losses, costs, expenses, and

liabilities, including, but not limited to, lost revenue and lost profits. I, therefore, agree to pay the Prepayment Premium as described above, if any Principal amount is prepaid, whether voluntarily, or by reason of an acceleration of the Maturity Date on default (including, but not limited to, acceleration on any transfer or conveyance of any right, title, or interest in the Property securing the loan giving the Note Holder the right to accelerate the maturity of this Note as provided in the Security Instrument).

**10. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, this Note is secured by that certain Construction Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing against the Property (the "Security Instrument"), dated the same date as this Note. The Security Instrument protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note, and in the event of default by me under this Note, the Security Instrument or other Loan Documents, Note Holder may have the right to exercise certain remedies including, without limitation, foreclosure of my interest in the Property and/or requiring me to make immediate payment in full of all amounts I owe under this Note.

**11. INDEMNIFIED TAXES.**

Any payments by me or on account of any of my obligations under any Loan Document shall be made without deduction or withholding for any tax; provided, however, that if any law requires deduction or withholding of a tax, such tax shall be deducted and withheld from such payment and paid to the relevant governmental authority in accordance with applicable law and the sum payable shall be increased so that after such deduction or withholding (including deductions or withholdings applicable to additional amounts payable hereunder) Note Holder receives an amount equal to the sum it would have received had no such deduction or withholding been made; provided, further, that such additional amounts shall not include any taxes measured by net income (however denominated) or franchise taxes imposed on Note Holder. I shall promptly indemnify Note Holder for all such non-excluded taxes (including interest and additions to tax) and related expenses. I shall promptly deliver evidence satisfactory to Note Holder of any payments made pursuant to this Section 11. I shall also pay all documentary, recording, filing or similar taxes that arise with respect to any of the Loan Documents.

**12. USE OF NOTE PROCEEDS.**

I, the Borrower, represent to the Lender that the proceeds of this Note will not be used for personal, family or household purposes or for the purpose of purchasing or carrying margin stock or margin securities within the meaning of Regulations U and X of the Board of Governors of the Federal Reserve System, 12 C.F.R. Parts 221 and 224.

**13. LOAN AGREEMENT.**

The loan evidenced by this Note is subject to that certain Construction Loan Agreement dated December 13, 2024 (the "Loan Agreement"), the terms of which are incorporated herein by this reference.

**14. CHOICE OF LAW.**

Georgia law shall exclusively govern the interpretation and enforcement of this Note.

**15. NOTICE TO BORROWER.**

DO NOT SIGN THIS NOTE IF IT CONTAINS BLANK SPACES. ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.

THIS NOTE PROVIDES FOR A BALLOON PAYMENT WHICH WILL BE DUE ON THE DATE SPECIFIED IN PARAGRAPH 3 ABOVE, WHETHER OR NOT YOU HAVE OBTAINED A LOAN TO REPAY THIS LOAN. YOU MAY NOT RELY UPON ANY VERBAL ASSURANCES OR AGREEMENTS BY ANY PERSONNEL OF NOTE HOLDER OR ANY MORTGAGE BROKER THAT THEY HAVE OR WILL OBTAIN OR ARRANGE A REPLACEMENT LOAN FOR YOU. OBTAINING A REPLACEMENT LOAN IS YOUR RESPONSIBILITY.

**16. STATE SPECIFIC PROVISIONS.**

Not applicable.

**17. TIME.**

Time is of the essence in this Note.

**18. USURY.**

It is the intent of Lender and Borrower in the execution of this Note, and all other instruments now or hereafter securing this Note or executed in connection therewith or under any other written or oral agreement by Borrower in favor of Lender to

contract in strict compliance with applicable usury law.

**19. SEVERABILITY.**

Wherever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid pursuant to applicable law, but if any provision of this Note shall be prohibited by or invalid pursuant to applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note.

[SIGNATURES BEGIN ON THE FOLLOWING PAGE]

IN WITNESS WHEREOF, the undersigned Borrower has executed this Note as of the date first written above.
**BORROWER:**

TPG Venture Holdings, LLC

By: ______________________________
Name: Kelly Taylor
Title: Member

**BY INITIALING BELOW, BORROWER UNDERSTANDS AND AGREES TO THE WAIVERS IN SECTION 9 ("WAIVERS").**
Borrower's Initials: ________/________

Docusign Envelope ID: BC403579-597D-4528-9CE6-CEC1A847705B

IN WITNESS WHEREOF, the undersigned Borrower has executed this Note as of the date first written above.
**BORROWER:**

TPG Venture Holdings, LLC

By: ______________________
Name: Kelly Taylor
Title: Member

**BY INITIALING BELOW, BORROWER UNDERSTANDS AND AGREES TO THE WAIVERS IN SECTION 9 ("WAIVERS").**
Borrower's Initials: KT / ________

# Exhibit "B"

# GUARANTY

PROPERTY ADDRESS: 511 E Olive St Decatur IL 62526 1605 Walnut Grove Ave, Decatur, MACON, IL 62526 2121 W Waggoner St, Decatur, MACON, IL 62526 1057 W Howard St, Decatur, MACON, IL 62522 1645 N Monroe St, Decatur, MACON, IL 62526 1408 E Olive St, Decatur, MACON, IL 62526 645 W Sawyer St, Decatur, MACON, IL 62526 1565 N Wilson Ave, Decatur, MACON, IL 62526 1023 S Silas St, Decatur, MACON, IL 62521 913 W View St, Decatur, MACON, IL 62522 1201 W King St, Decatur, MACON, IL 62522 1075 S Silas St, Decatur, MACON, IL 62521 825 E Lincoln Ave, Decatur, MACON, IL 62521 1404 E Cantrell St, Decatur, MACON, IL 62521 1789 N Lowber St, Decatur, MACON, IL 62526 2002 N College St, Decatur, MACON, IL 62526 545 S 19th St, Decatur, MACON, IL 62521 443 E Olive St, Decatur, MACON, IL 62526 450 E Olive St, Decatur, MACON, IL 62526 451 E Olive St, Decatur, MACON, IL 62526 1420 E Division St, Decatur, MACON, IL 62526 1854 N Maple Ave, Decatur, MACON, IL 62526 527 E Olive St, Decatur, MACON, IL 62526 263 E Olive St, Decatur, MACON, IL 62526 1173 E Harrison Ave, Decatur, MACON, IL 62526

This GUARANTY dated as of December 13, 2024 (this "Guaranty"), is made by Kelly Taylor , an individual resident of the state of ("Guarantor"), in favor of TROPHY POINT INVESTMENT GROUP, a Georgia limited liability company, as lender under the Note (as defined below) (together with its successors and assigns, collectively, "Lender").

W I T N E S S E T H:

WHEREAS, Lender is making a loan to TPG Venture Holdings, LLC, a Wyoming Limited Liability Company. (the "Borrower") in the original principal amount of SEVEN HUNDRED AND TWENTY THOUSAND and 0/100 Dollars ($720,000.00) (the "Loan") as evidenced by (i) that certain promissory note dated the date hereof, executed by Borrower and made payable to the order of Lender in the amount of the Loan (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "Note") and (ii) that certain Construction Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated the date hereof, by Borrower in favor of Lender (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "Security Instrument"). The Note and the Security Instrument, together with all riders thereto and related certificates and ancillary documents, are collectively referred to herein as the "Loan Documents".

WHEREAS, pursuant to the Security Instrument, Borrower's obligations under the Loan Documents will be secured by, among other things, the real property described in the Security Instrument (collectively, the "Property").

WHEREAS, Guarantor is a direct or indirect owner of an equity interest in Borrower, and accordingly will derive material direct and indirect financial and other benefits from the transactions contemplated by the Note and the other Loan Documents.

WHEREAS, to induce Lender to make the Loan, Guarantor has agreed to execute and deliver this Guaranty.

NOW, THEREFORE, in consideration of the covenants set forth in this Guaranty, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree, represent and warrant as follows:

ARTICLE 1

NATURE AND SCOPE OF GUARANTY

Section 1.1 Guaranty of Obligation. Guarantor hereby irrevocably and unconditionally guarantees the due and prompt payment and performance in full when due, whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter, of the following (the "Guaranteed Obligations"), such that my failure to perform same as set forth herein shall constitute an "Event of Default" hereunder:

(a) the principal of, interest on, and all other amounts due at any time under the Note or any other Loan Document, including prepayment penalties, late payment charges, interest charged at the default rate (if applicable), and accrued interest as provided in the Loan Documents (including interest that may accrue during the pendency of any proceeding under Bankruptcy Laws as described below), advances, costs and expenses to perform the obligations of Borrower or to protect the Property or the security of the Security Instrument;

(b) all other covenants, agreements, liabilities, obligations (including indemnity obligations and any other monetary obligations) of Borrower under the Loan Documents; and

(c) all expenses and costs, including reasonable attorneys' fees and expenses, fees and out-of-pocket expenses of expert

witnesses and costs of investigation, incurred by Lender as a result of any default under the Loan Documents or in connection with efforts to collect any amount due under the Loan Documents, or to enforce the provisions of the Loan Documents, including those incurred in post-judgment collection efforts and in any bankruptcy or insolvency proceeding or any judicial or non-judicial foreclosure proceeding or other exercise by Lender of its rights and remedies under any Loan Document or any transfer in lieu of foreclosure (a "Foreclosure Event"), including any action for relief from the automatic stay of any bankruptcy proceeding or Foreclosure Event, to the extent permitted by law.

Without limiting the generality of the foregoing, Guarantor's liability shall extend to all amounts that constitute part of the Guaranteed Obligations and would be owed by Borrower to Lender under the Loan Documents but for the fact that they are unenforceable or not allowable due to the existence of a proceeding under Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as the same may be amended from time to time, and any successor statute or statutes and all rules and regulations from time to time promulgated thereunder, and any comparable foreign laws relating to bankruptcy, insolvency or creditors' rights or any other Federal or state bankruptcy or insolvency law (collectively, "Bankruptcy Laws").

Section 1.2 Nature of Guaranty. Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor. This Guaranty is an irrevocable, absolute, unconditional, continuing guaranty of payment and performance and not merely a guaranty of collection. This Guaranty may not be revoked by Guarantor and shall continue to be effective with respect to any Guaranteed Obligations arising or created after any attempted revocation by Guarantor. If Guarantor is a married person, and the state of residence of Guarantor or Guarantor's spouse is a community property jurisdiction, Guarantor agrees that Lender may satisfy Guarantor's obligations under this Guaranty to the extent of all of Guarantor's separate property and Guarantor's interest in any community property.

Section 1.3 Survival of Guaranty. This Guaranty is a continuing guaranty and shall remain in full force and effect until the repayment and performance in full of the Guaranteed Obligations (subject to Section 1.8). The obligations of Guarantor under this Guaranty shall survive any Foreclosure Event, and any release or reconveyance of the Security Instrument or any release of any other security or guaranty for the Loan.

Section 1.4 Obligations Unsecured. The obligations of Guarantor under this Guaranty shall not be secured by the Security Instrument or the other Loan Documents and shall not be obligations of Borrower notwithstanding anything to the contrary in any other Loan Document.

Section 1.5 Payment by Guarantor. If all or any part of the Guaranteed Obligations is or shall give rise to a monetary obligation, and such monetary obligation shall not be punctually paid when due, Guarantor shall, immediately upon demand by Lender, and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity, or any other notice whatsoever, pay in lawful money of the United States, the amount due on the Guaranteed Obligations to Lender at Lender's address as set forth in such demand. Such demand(s) may be made at any time coincident with or after the time for payment of the Guaranteed Obligations.

Section 1.6 No Duty to Pursue Others. It shall not be necessary for Lender (and Guarantor hereby waives any rights which it may have to require Lender), in order to enforce the obligations of Guarantor hereunder, first to (a) make any demand upon or institute suit or exhaust its remedies against Borrower or others liable for amounts due under the Guaranteed Obligations or any other person or entity, (b) institute suit or exhaust its remedies with respect to the Guaranteed Obligations or any person or entity, (c) enforce Lender's rights against any collateral which shall ever have been given to secure any of the Guaranteed Obligations, (d) enforce Lender's rights against any other guarantor of the Guaranteed Obligations, (e) join Borrower or any others liable on the Guaranteed Obligations in any action seeking to enforce this Guaranty or (f) resort to any other means of obtaining payment of the Guaranteed Obligations. Lender shall not be required to mitigate damages or take any other action to reduce, collect or enforce the Guaranteed Obligations.

Section 1.7 Payment of Expenses. Guarantor shall, immediately upon demand by Lender, pay all reasonable costs and out-of-pocket expenses (including court costs and attorneys' fees, disbursements, costs and expenses) incurred by Lender in the enforcement hereof or the preservation of Lender's rights hereunder and any and all damages, losses, claims, liabilities and related reasonable costs and out-of-pocket expenses, including court costs and attorneys' fees, disbursements, costs and expenses incurred by Lender arising from any breach or failure to timely perform any provisions of this Guaranty by Guarantor.

Section 1.8 Reinstatement. In the event that, pursuant to any controlling applicable federal, state and local statutes, regulations,

ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions (collectively, "Applicable Law"), including any Bankruptcy Law, or any judgment, order or decision thereunder, Lender must rescind or restore any payment, or any part thereof, received by Lender in satisfaction of the Guaranteed Obligations (including pursuant to any settlement entered into by Lender in its discretion), or if Lender elects to do so upon the advice of its counsel, then all obligations under this Guaranty in respect of such payment shall automatically be reinstated as though such payment had been due but not made and shall remain in full force and effect and any prior release or discharge from the terms of this Guaranty given to Guarantor shall be without effect. It is the intention of Lender and Guarantor that Guarantor's obligations hereunder shall not be discharged except by its performance of such obligations and then only to the extent of such performance.

ARTICLE 2

EVENTS AND CIRCUMSTANCES NOT REDUCING OR DISCHARGING GUARANTOR'S OBLIGATIONS

Section 2.1 Events and Circumstances. Guarantor hereby consents and agrees to each of the following, and agrees that Guarantor's obligations under this Guaranty shall not be released, diminished, impaired, reduced or adversely affected by any of the following, and waives any common law, equitable, statutory or other rights (including rights to notice) that Guarantor might otherwise have as a result of or in connection with any of the following:

(a) Modifications. Any renewal, extension, increase, modification, alteration or rearrangement of all or any part of the Guaranteed Obligations, the Loan Documents, or any other document, instrument, contract or understanding between Borrower or Guarantor and Lender, or any other person or entity, pertaining to the Guaranteed Obligations or any failure of Lender to notify Guarantor of any such action.

(b) Adjustment. Any adjustment, indulgence, forbearance or compromise that might be granted or given by Lender to Borrower or Guarantor.

(c) Financial Condition. The commencement, filing or continuation of any voluntary or involuntary bankruptcy, insolvency, reorganization, arrangement, readjustment, assignment for the benefit of creditors, composition, receivership, liquidation, marshaling of assets and liabilities or similar events or proceedings with respect to Borrower, Guarantor or any other person or entity, or any of their respective property or creditors or any action taken by any trustee or receiver or by any court in such proceeding; or the making of a general assignment for the benefit of creditors by Borrower, Guarantor or any other person or entity; or any sale, lease or transfer of any or all of the assets of Borrower, Guarantor or any other person or entity.

(d) Invalidity of Guaranteed Obligations. The invalidity, illegality or unenforceability of all or any part of the Guaranteed Obligations, or any document or agreement executed in connection with the Guaranteed Obligations, for any reason whatsoever, including the fact that (a) the Guaranteed Obligations, or any part thereof, exceeds the amount permitted by law, (b) the act of creating the Guaranteed Obligations or any part thereof is ultra vires, (c) the officers or representatives executing the Loan Documents or otherwise creating the Guaranteed Obligations acted in excess of their authority, (d) the Guaranteed Obligations violate applicable usury laws, (e) Borrower has valid defenses, claims or offsets (whether at law, in equity or by agreement) which render the Guaranteed Obligations wholly or partially unenforceable or uncollectible from Borrower, other than payment and performance in full of the Guaranteed Obligations, (f) the creation, performance or repayment of the Guaranteed Obligations (or the execution, delivery and performance of any document or instrument representing part of the Guaranteed Obligations or that was executed in connection with the Guaranteed Obligations, or given to secure the repayment of the Guaranteed Obligations) is illegal, uncollectible or unenforceable, or (g) the Loan Documents have been forged or otherwise are irregular or not genuine or authentic, it being agreed that Guarantor shall remain liable hereon regardless of whether Borrower or any other person or entity be found not liable on the Guaranteed Obligations or any part thereof for any reason.

(e) Release of Liability. Any full or partial release of the liability of Borrower on the Guaranteed Obligations, or any part thereof, or of any co-guarantors, or any other person or entity now or hereafter liable therefor, whether directly or indirectly, jointly, severally, or jointly and severally, to pay, perform, guarantee or assure the payment of the Guaranteed Obligations, or any part thereof, it being acknowledged and agreed by Guarantor that (a) Guarantor may be required to pay the Guaranteed Obligations in full without assistance or support of Borrower or any other person or entity and (b) Guarantor has not been induced to enter into this Guaranty on the basis of a contemplation, belief, understanding or agreement that any other person or entity will be liable to pay or perform the Guaranteed Obligations, or that Lender will look to any other person or entity to pay

or perform the Guaranteed Obligations.

(f) Other Collateral. The taking or accepting of any other security, collateral or guaranty, or other assurance of payment, for all or any part of the Guaranteed Obligations.

(g) Release of Collateral. Any release, surrender, exchange, subordination, deterioration, waste, loss or impairment (including negligent, willful, unreasonable or unjustifiable impairment) of any collateral, property or security at any time existing in connection with, or assuring or securing payment of, all or any part of the Guaranteed Obligations, or any failure to perfect a lien in any collateral.

(h) Care and Diligence. The failure of Lender or any other person or entity to exercise diligence or reasonable care in the enforcement of its rights under the Loan Documents or the preservation, protection, enforcement, sale or other handling or treatment of all or any part of any collateral, property or security, including but not limited to any neglect, delay, omission, failure or refusal of Lender (a) to take or prosecute any action for the enforcement or collection of any of the Guaranteed Obligations or (b) to foreclose, or initiate any action to foreclose, or, once commenced, prosecute to completion any action to foreclose upon any security therefor, or (c) to take or prosecute any action in connection with any instrument or agreement evidencing or securing all or any part of the Guaranteed Obligations.

(i) Unenforceability. The fact that any collateral, security, security interest or lien contemplated or intended to be given, created or granted as security for the repayment of the Guaranteed Obligations, or any part thereof, shall not be properly perfected or created, or shall prove to be unenforceable or subordinate to any other security interest or lien, it being acknowledged and agreed by Guarantor that it is not entering into this Guaranty in reliance on, or in contemplation of the benefits of, the validity, enforceability, collectability or value of any of the collateral for the Guaranteed Obligations or the priority of any security interest or lien therein.

(j) Offset. Any existing or future offset, claim or defense of Borrower, Guarantor or any other person or entity, against Lender, Borrower or any other person or entity or against payment or performance of the Guaranteed Obligations, whether such offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise, other than the payment and performance of the Guaranteed Obligations in full.

(k) Compliance with Loan Documents. Any failure, omission or delay on the part of Borrower, Guarantor, any other guarantor of the Guaranteed Obligations or Lender to conform or comply with any term of any of the Loan Documents.

(l) Corporate Events. The reorganization, merger or consolidation of Borrower into or with any other person or entity; or any dissolution of Borrower or any other entity; or any changes in the shareholders, partners or members of Borrower or any other person or entity; or any reorganization of Borrower or any other person or entity; or any other change in the relationship between Borrower, Guarantor or any other guarantor of the Guaranteed Obligations, or any termination of such relationship.

(m) Preference. Any payment by Guarantor to Lender that is held to constitute a preference under Bankruptcy Laws, or for any reason Lender is required to refund such payment or pay such amount to any other person or entity.

(n) Other Actions Taken or Omitted. Any other action taken or omitted to be taken with respect to the Loan Documents, the Guaranteed Obligations, or the security and collateral therefor, whether or not such action or omission prejudices Guarantor or any other person or entity or increases the likelihood that Guarantor will be required to pay the Guaranteed Obligations pursuant to the terms hereof.

It is the unambiguous and unequivocal intention of Guarantor that it shall be obligated to pay the Guaranteed Obligations when due, notwithstanding any occurrence, circumstance, event, action, or omission whatsoever, whether contemplated or not contemplated, and whether or not otherwise or particularly described herein, which obligation shall be deemed satisfied only upon the full and final payment and performance of the Guaranteed Obligations.

## ARTICLE 3
## GUARANTOR WAIVERS

Section 3.1 Waiver of Applicable Laws. Guarantor hereby irrevocably waives the benefit of all principles and provisions of law, statutory or otherwise, which are or might be in conflict with the terms of this Guaranty (and agrees that Guarantor's obligations shall not be affected by any circumstances, whether or not referred to in this Guaranty, which might otherwise constitute a legal or equitable discharge of a surety or a guarantor) and the benefits of any right of discharge under any and all statutes or other laws relating to guarantors or sureties and any other rights of sureties and guarantors.

Section 3.2 Waiver of Notice. Guarantor hereby waives all notices with respect to the Loan Documents and this Guaranty that

may be required by statute, rule of law or otherwise to preserve Lender's rights against Guarantor under this Guaranty, including notice of (a) any loan or other indebtedness of Borrower, (b) acceptance of this Guaranty, (c) the execution and delivery by Borrower of any documents or instruments relating to the Loan or in connection with the Property or any collateral, (d) Lender's transfer or disposition of the Guaranteed Obligations, or any part thereof, (e) the occurrence of any default under the Loan Documents, (f) dishonor, (g) notice of intent to accelerate, notice of acceleration, (h) sale or foreclosure (or posting or advertising for sale or foreclosure) of any collateral under the Loan Documents, (i) protest, proof of non-payment or default by Borrower or any other guarantor of the Guaranteed Obligations and (j) any other action at any time taken or omitted by Lender, and, generally, all demands and notices of every kind in connection with this Guaranty or the other Loan Documents.

Section 3.3 Changes in the Guaranteed Obligations. At any time or from time to time and any number of times, without notice to Guarantor and without releasing, discharging or affecting the liability of Guarantor hereunder: (a) the time for payment of the principal of, interest on or other amounts payable under the Loan may be extended or the Loan may be renewed in whole or in part; (b) the rate of interest on or period of amortization of the Loan or the amount of the monthly principal payments payable under the Loan Documents may be modified; (c) the time for Borrower's performance of or compliance with any covenant or agreement contained in any Loan Document, whether presently existing or hereinafter entered into, may be extended or such performance or compliance may be waived; (d) the maturity of the Loan may be accelerated as provided in the Loan Documents; (e) any or all payments due under the Loan Documents may be reduced; (f) any Loan Document may be modified or amended by Lender and Borrower in any respect, including an increase in the principal amount of the Loan; (g) any amounts held under the Loan Documents may be released; (h) the payment of the principal of, interest on or other amounts payable under Loan or any security for the Loan, or both, may be subordinated to the right to payment or the security, or both, of any other present or future creditor of Borrower; (i) any payments made by Borrower to Lender may be applied to the principal of; interest on or other amounts payable under the Loan in such order and priority as Lender determines; (j) Lender may foreclose on any collateral securing the Loan by one or more judicial or non-judicial sales, accept an assignment of any such collateral in lieu of foreclosure; and (k) any other terms of the Loan Documents may be modified as required by Lender.

ARTICLE 4

REPRESENTATIONS AND WARRANTIES

Section 4.1 Representations and Warranties. To induce Lender to enter into the Loan Documents and extend credit to Borrower, Guarantor represents and warrants to Lender as of the date hereof as follows:

(a) This Guaranty constitutes a legal, valid and binding obligation of Guarantor and is enforceable against Guarantor in accordance with its terms, subject only to applicable bankruptcy, insolvency and similar laws affecting rights of creditors generally, and subject, as to enforceability, to general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law).

(b) The execution, delivery and performance of this Guaranty by Guarantor (i) will not result in any violation of the provisions of any Applicable Laws, (ii) will not conflict with or result in a breach of any of the terms or provisions of, or constitute a default under the terms of any indenture, mortgage, deed of trust, deed to secure debt, loan agreement, management agreement or other agreement or instrument to which Guarantor is a party or to which any of Guarantor's property or assets is subject, and (iii) will not result in or require the creation or imposition of any lien upon or with respect to any of the assets of Guarantor.

(c) Any consent, approval, authorization, order, registration or qualification of or with a governmental authority or other person or entity required for the execution, delivery and performance by Guarantor of this Guaranty has been obtained and is in full force and effect.

(d) Guarantor is an affiliate of Borrower, is the owner of a direct or indirect equity interest in Borrower, and has received, or will receive, direct and indirect material financial and other benefits from the making of this Guaranty.

(e) Guarantor is familiar with, and has independently reviewed books and records regarding, the financial condition of Borrower and is familiar with the value of any and all collateral intended to be created as security for the payment of the Guaranteed Obligations; provided, however, Guarantor is not relying on such financial condition or the collateral as an inducement to enter into this Guaranty.

(f) Neither Lender nor any of its representatives has made any representation, warranty or statement to Guarantor in order to induce Guarantor to execute this Guaranty and Guarantor has not relied on Lender for any guidance or expertise in analyzing the financial or other consequences of the transactions contemplated by this Guaranty or any other Loan Document or

otherwise relied on Lender in any manner in connection with interpreting, entering into or otherwise in connection with this Guaranty, any other Loan Document or any of the matters contemplated hereby or thereby.

(g) Guarantor has received a copy of each of the Loan Documents and this Guaranty. Guarantor has read this Guaranty and each of the other Loan Documents and understands the nature and structure of the transactions contemplated by this Guaranty and the other Loan Documents. Guarantor understands the risks inherent in such transactions, including the risk of loss of all or any part of the Property or of the assets of Guarantor. Guarantor has had the opportunity to consult with its legal counsel prior to entering into the Guaranty and Guarantor availed himself or herself of such opportunity to the extent he or she desired.

(h) There are no actions, suits or proceedings at law or in equity by or before any governmental authority, arbitrator or other entity now pending or, to Guarantor's knowledge, threatened against or affecting Guarantor.

(i) Guarantor has (i) not entered into the transaction contemplated by this Guaranty with the actual intent to hinder, delay or defraud any creditor and (ii) received reasonably equivalent value in exchange for its obligations under this Guaranty. After giving effect to this Guaranty, (x) the fair saleable value of Guarantor's assets will exceed its total liabilities, (y) Guarantor's assets will not constitute unreasonably small capital to carry out its business as conducted or as proposed to be conducted and (z) Guarantor will be able to pay its liabilities as they mature. In the last ten years, Guarantor has not been the subject of or a party to any pending bankruptcy, reorganization, receivership or other insolvency proceeding or any dissolution or liquidation (each, an "Event of Bankruptcy"). Guarantor is not contemplating an Event of Bankruptcy and to Guarantor's knowledge no other person or entity is contemplating an Event of Bankruptcy in respect of Guarantor.

ARTICLE 5

AGREEMENT TO PAY, SUBROGATION AND SUBORDINATION

Section 5.1 Subordination of All Guarantor Claims.

(a) Without limiting any other right that Lender has at law or in equity against Guarantor, if Borrower fails to pay any Guaranteed Obligation when and as due, whether at maturity, by acceleration, after notice of prepayment or otherwise, Guarantor agrees to promptly pay the amount of such unpaid Guaranteed Obligations to Lender in cash. Upon payment by Guarantor of any sums to Lender as provided herein, all of Guarantor's rights of subrogation, exoneration, contribution, reimbursement, indemnity or otherwise arising therefrom against Borrower with respect to such sum shall be subordinate and junior in right of payment to the prior indefeasible payment in full in cash of all monetary Guaranteed Obligations. If any payment shall be paid to Guarantor in violation of the immediately preceding sentence on account of such subrogation, exoneration, contribution, reimbursement, indemnity or similar right, such amount shall be held in trust for the benefit of Lender, segregated from other funds of Guarantor, and promptly paid or delivered to Lender in the same form as so received (with any necessary endorsement or assignment) to be credited against the payment of the Guaranteed Obligations, whether due or to become due, in accordance with the terms of the Loan Documents or to be held as collateral for the Guaranteed Obligations.

(b) Guarantor hereby subordinates any and all debts, liabilities and obligations owed to it by Borrower (including all rights and claims of Guarantor against Borrower as a result of Guarantor's payment of all or part of the Guaranteed Obligations) (the "Subordinated Obligations") to the Guaranteed Obligations as follows:

(i) Guarantor shall not accept, demand or take any action to collect any payment on the Subordinated Obligations without the prior written consent of Lender.

(ii) Guarantor agrees that Lender shall be entitled to receive full payment in cash of all Guaranteed Obligations (including interest accruing during the pendency of any proceeding under Bankruptcy Laws, regardless of whether allowed or allowable in such proceeding ("Post-Petition Interest")) in any proceeding under Bankruptcy Laws against Borrower before Guarantor receives any payment on account of any Subordinated Obligations.

(iii) After the occurrence and during the continuance of any default under the Loan Documents (including the commencement and continuation of any proceeding against Borrower or Guarantor under Bankruptcy Laws), Guarantor shall collect, enforce and receive payments on the Subordinated Obligations as trustee for Lender and deliver such payments to Lender on account of the Guaranteed Obligations (including Post-Petition Interest), together with any necessary endorsements or other instruments of transfer, without reducing or affecting the liability of Guarantor under this Guaranty in any respect.

(iv) After the occurrence and during the continuance of any default under the Loan Documents (including the commencement and continuation of any proceeding against Borrower or Guarantor under Bankruptcy Laws), Lender is authorized and

empowered (but not obligated), in its discretion, (x) in the name of Guarantor, to collect and enforce, and to submit claims in respect of, Subordinated Obligations and to apply any amount so received to the Guaranteed Obligations (including Post-Petition Interest), and (y) to require Guarantor (A) to collect and enforce and to submit claims in respect of, Subordinated Obligations and (B) to pay any amounts received on such obligations to Lender for application to the Guaranteed Obligations (including Post-Petition Interest).

Section 5.2 Payments Held in Trust. In the event that, notwithstanding anything to the contrary in this Guaranty, Guarantor should receive any funds, payments, claims and/or distributions which are prohibited by this Guaranty, Guarantor agrees to hold in trust for Lender an amount equal to the amount of all funds, payments, claims or distributions so received, and agrees that it shall have absolutely no dominion over the amount of such funds, payments, claims and/or distributions so received except to pay such funds, payments, claims and/or distributions promptly to Lender, and Guarantor covenants promptly to pay the same to Lender.

Section 5.3 Liens Subordinate. Guarantor agrees that no liens, security interests, judgment liens, charges or other encumbrances shall exist upon Borrower's assets securing payment of the Subordinated Obligations and any such liens, security interests, judgment liens, charges or other encumbrances which may exist shall be and remain inferior and subordinate to any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing payment of the Guaranteed Obligations, regardless of whether such encumbrances in favor of Guarantor or Lender presently exist or are hereafter created or attach. Without the prior written consent of Lender, Guarantor shall not (a) exercise or enforce any creditor's right it may have against Borrower, or (b) foreclose, repossess, sequester or otherwise take steps or institute any action or proceedings (judicial or otherwise, including the commencement of, or joinder in, any proceeding under Bankruptcy Laws) to enforce any liens, mortgages, deeds of trust, deeds to secure debt, security interests, collateral rights, judgments or other encumbrances on assets of Borrower held by Guarantor.

ARTICLE 6

MISCELLANEOUS

Section 6.1 Waiver; Amendment. No failure to exercise, and no delay in exercising, on the part of Lender, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right. The rights of Lender hereunder shall be in addition to all other rights provided by law. No modification, amendment, extension, discharge, termination or waiver of any provision of this Guaranty, nor consent to any departure by Guarantor or Lender therefrom, shall in any event be effective unless the same shall be in a writing signed by the party or parties against whom enforcement is sought, and then any such waiver or consent shall be effective only in the specific instance, and for the purpose, for which given. No notice or demand given in any case shall constitute a waiver of the right to take other action in the same, similar or other instances without such notice or demand.

Section 6.2 Notices. All notices given by Guarantor or Lender in connection with this Guaranty must be in writing. Any notice to Guarantor in connection with this Guaranty shall be deemed to have been given to Guarantor when mailed by first class mail or when actually delivered to Guarantor's notice address if sent by other means. Guarantor's notice address shall be the address set forth on the signature page hereto unless Guarantor has designated a substitute notice address by notice to Lender. Guarantor shall promptly notify Lender of Guarantor's change of address. If Lender specifies a procedure for reporting Guarantor's change of address, then Guarantor shall only report a change of address through that specified procedure. There may be only one designated notice address under this Guaranty at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated in the Definitions Section of the Note unless Lender has designated another address by notice to Guarantor. Any notice in connection with this Guaranty shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Guaranty is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Guaranty.

Section 6.3 Governing Law. This Guaranty shall be governed by federal law and the law of Georgia without regard to the application of choice of law principles that would result in the application of the laws of another jurisdiction.

Section 6.4 Venue. Guarantor agrees that any controversy arising under or in relation to this Guaranty shall be litigated exclusively in Georgia. The state and federal courts and authorities with jurisdiction in Georgia shall have exclusive jurisdiction over all controversies that arise under or in relation to this Guaranty or any other Loan Document with respect to the subject matter hereof. Guarantor irrevocably consents to service, jurisdiction and venue of such courts for any such

litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise.

Section 6.5 WAIVER OF JURY TRIAL. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR (A) AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS GUARANTY OR ANY LOAN DOCUMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS GUARANTOR AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY GUARANTOR, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

Section 6.6 Severability. Wherever possible, each provision of this Guaranty shall be interpreted in such manner as to be effective and valid pursuant to Applicable Law, but if any provision of this Guaranty shall be prohibited by or invalid pursuant to Applicable Law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty.

Section 6.7 Prior Agreements. THIS GUARANTY REPRESENTS THE FINAL AGREEMENT OF GUARANTOR WITH RESPECT TO THE SUBJECT MATTER HEREOF AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES. All prior or contemporaneous agreements, understandings, representations and statements, oral or written, relating to the subject matter hereof are superseded by this Guaranty.

Section 6.8 Defined Terms; Construction.

(a) Capitalized terms used herein without definition shall have the meanings ascribed thereto in the other Loan Documents.

(b) Any reference in this Guaranty to a "Section" shall, unless otherwise explicitly provided, be construed as referring to a Section of this Guaranty.

(c) The Article and Section headings in this Guaranty are included herein for convenience of reference only and shall not constitute a part of this Guaranty for any other purpose.

(d) Any reference in this Guaranty to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time.

(e) Use of the singular in this Guaranty includes the plural and use of the plural includes the singular.

(f) As used in this Guaranty, the term "including" means "including, but not limited to" or "including, without limitation," and is for example only, and not a limitation.

(g) Whenever Guarantor's knowledge is implicated in this Guaranty or the phrase "to Guarantor's knowledge" or a similar phrase is used in this Guaranty, Guarantor's knowledge or such phrase(s) shall be interpreted to mean to the best of Guarantor's knowledge after reasonable and diligent inquiry and investigation.

(h) Unless otherwise provided in this Guaranty, if Lender's approval, consent, designation, determination, selection, estimate, action or decision is required, permitted or contemplated hereunder, such approval, consent, designation, determination, selection, estimate, action or decision shall be made in Lender's sole and absolute discretion.

(i) All references in this Guaranty to a separate instrument or agreement shall include such instrument or agreement as the same may be amended or supplemented from time to time pursuant to the applicable provisions thereof.

(j) The term "Borrower" as used herein shall include any new or successor corporation, association, partnership (general or limited), limited liability company, joint venture, trust or other individual or organization formed as a result of any merger, reorganization, sale, transfer, devise, gift or bequest of Borrower or any interest in Borrower.

Section 6.9 Recitals. The recital and introductory paragraphs hereof are a part hereof, form a basis for this Guaranty and shall be considered prima facie evidence of the facts and documents referred to therein.

Section 6.10 Rights and Remedies. If Guarantor becomes liable for any indebtedness owing by Borrower to Lender, by endorsement or otherwise, other than under this Guaranty, such liability shall not be in any manner impaired or affected hereby and the rights of Lender hereunder shall be cumulative of any and all other rights that Lender may ever have against Guarantor. The exercise by Lender of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy.

Section 6.11 Taxes. Any payments by or on account of any obligation of Guarantor under this Guaranty shall be made without deduction or withholding for any tax; provided, however, that if any law requires deduction or withholding of a tax, such tax

shall be deducted and withheld from such payment and paid to the relevant governmental authority in accordance with Applicable Law and the sum payable hereunder shall be increased so that after such deduction or withholding (including deductions or withholdings applicable to additional amounts payable hereunder) Lender receives an amount equal to the sum it would have received had no such deduction or withholding been made; provided, further, that such additional amounts shall not include any taxes measured by net income (however denominated) or franchise taxes imposed on Lender. Guarantor shall promptly indemnify Lender for all such non-excluded taxes (including interest and additions to tax) and related expenses. Guarantor shall promptly deliver evidence satisfactory to Lender of any payments made pursuant to this Section 6.11.

Section 6.12 Assignment. Lender may assign its rights under this Guaranty in whole or in part and, upon any such assignment, all the terms and provisions of this Guaranty shall inure to the benefit of and may be enforced by such assignee to the extent so assigned. Guarantor may not assign its rights, duties and obligations under this Guaranty, in whole or in part, without Lender's prior written consent, and any such assignment shall be deemed void ab initio. The terms used to designate any of the parties herein shall be deemed to include the heirs, legal representatives, successors and assigns of such parties.

Section 6.13 Time is of the Essence. Guarantor agrees that, with respect to each and every obligation and covenant contained in this Guaranty, time is of the essence.

Section 6.14 Credit Report. Guarantor acknowledges and agrees that Lender is authorized, no more frequently than once in any twelve (12) month period, to obtain a credit report (if applicable) on Guarantor, the cost of which shall be paid for by Guarantor. Guarantor acknowledges and agrees that Lender is authorized to obtain a credit score (if applicable) for Guarantor at any time at Lender's expense.

Section 6.15 State-Specific Provisions. Guarantor waives the benefit of the provisions of O.C.G.A. Section 10-7-24.

Section 6.16 Community Property Provision. Not applicable.

The parties executing this Guaranty intend to create an instrument executed under seal.

[NO FURTHER TEXT ON THIS PAGE]

Docusign Envelope ID: BC403579-597D-4528-9CE6-CEC1A847705B

IN WITNESS WHEREOF, Guarantor has signed and delivered this Guaranty as of the date first written above, under seal (where applicable). Where Applicable Law so provides, Guarantor intends that this Guaranty shall be deemed to be signed and delivered as a sealed instrument.

GUARANTOR:
Kelly Taylor _______________ (SEAL)
889ADBE6F09B48B...
Kelly Taylor
Address for Notices to Guarantor:
12561 E Sussex Way
Sanger, CA 93657
Guarantor represents and warrants that Guarantor is:
[____] single
[_X_] married
[____] an entity
Guarantor represents and warrants that Guarantor is a resident of .

# Exhibit "C"

# GUARANTY

## PROPERTY ADDRESS: 511 E Olive St Decatur IL 62526

This GUARANTY dated as of December 13, 2024 (this "Guaranty"), is made by Robert Taylor, an individual resident of the state of ("Guarantor"), in favor of TROPHY POINT INVESTMENT GROUP, a Georgia limited liability company, as lender under the Note (as defined below) (together with its successors and assigns, collectively, "Lender").

WITNESSETH:

WHEREAS, Lender is making a loan to TPG Venture Holdings, LLC, a Wyoming Limited Liability Company. (the "Borrower") in the original principal amount of SIX HUNDRED AND TWENTY ONE THOUSAND AND SIX HUNDRED and 0/100 Dollars ($621,600.00) (the "Loan") as evidenced by (i) that certain promissory note dated the date hereof, executed by Borrower and made payable to the order of Lender in the amount of the Loan (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "Note") and (ii) that certain Construction Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated the date hereof, by Borrower in favor of Lender (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "Security Instrument"). The Note and the Security Instrument, together with all riders thereto and related certificates and ancillary documents, are collectively referred to herein as the "Loan Documents".

WHEREAS, pursuant to the Security Instrument, Borrower's obligations under the Loan Documents will be secured by, among other things, the real property described in the Security Instrument (collectively, the "Property").

WHEREAS, Guarantor is a direct or indirect owner of an equity interest in Borrower, and accordingly will derive material direct and indirect financial and other benefits from the transactions contemplated by the Note and the other Loan Documents.

WHEREAS, to induce Lender to make the Loan, Guarantor has agreed to execute and deliver this Guaranty.

NOW, THEREFORE, in consideration of the covenants set forth in this Guaranty, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree, represent and warrant as follows:

ARTICLE 1

NATURE AND SCOPE OF GUARANTY

Section 1.1 Guaranty of Obligation. Guarantor hereby irrevocably and unconditionally guarantees the due and prompt payment and performance in full when due, whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter, of the following (the "Guaranteed Obligations"), such that my failure to perform same as set forth herein shall constitute an "Event of Default" hereunder:

(a) the principal of, interest on, and all other amounts due at any time under the Note or any other Loan Document, including prepayment penalties, late payment charges, interest charged at the default rate (if applicable), and accrued interest as provided in the Loan Documents (including interest that may accrue during the pendency of any proceeding under Bankruptcy Laws as described below), advances, costs and expenses to perform the obligations of Borrower or to protect the Property or the security of the Security Instrument; .

(b) all other covenants, agreements, liabilities, obligations (including indemnity obligations and any other monetary

obligations) of Borrower under the Loan Documents; and

(c) all expenses and costs, including reasonable attorneys' fees and expenses, fees and out-of-pocket expenses of expert witnesses and costs of investigation, incurred by Lender as a result of any default under the Loan Documents or in connection with efforts to collect any amount due under the Loan Documents, or to enforce the provisions of the Loan Documents, including those incurred in post-judgment collection efforts and in any bankruptcy or insolvency proceeding or any judicial or non-judicial foreclosure proceeding or other exercise by Lender of its rights and remedies under any Loan Document or any transfer in lieu of foreclosure (a "Foreclosure Event"), including any action for relief from the automatic stay of any bankruptcy proceeding or Foreclosure Event, to the extent permitted by law.

Without limiting the generality of the foregoing, Guarantor's liability shall extend to all amounts that constitute part of the Guaranteed Obligations and would be owed by Borrower to Lender under the Loan Documents but for the fact that they are unenforceable or not allowable due to the existence of a proceeding under Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as the same may be amended from time to time, and any successor statute or statutes and all rules and regulations from time to time promulgated thereunder, and any comparable foreign laws relating to bankruptcy, insolvency or creditors' rights or any other Federal or state bankruptcy or insolvency law (collectively, "Bankruptcy Laws").

Section 1.2 Nature of Guaranty. Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor. This Guaranty is an irrevocable, absolute, unconditional, continuing guaranty of payment and performance and not merely a guaranty of collection. This Guaranty may not be revoked by Guarantor and shall continue to be effective with respect to any Guaranteed Obligations arising or created after any attempted revocation by Guarantor. If Guarantor is a married person, and the state of residence of Guarantor or Guarantor's spouse is a community property jurisdiction, Guarantor agrees that Lender may satisfy Guarantor's obligations under this Guaranty to the extent of all of Guarantor's separate property and Guarantor's interest in any community property.

Section 1.3 Survival of Guaranty. This Guaranty is a continuing guaranty and shall remain in full force and effect until the repayment and performance in full of the Guaranteed Obligations (subject to Section 1.8). The obligations of Guarantor under this Guaranty shall survive any Foreclosure Event, and any release or reconveyance of the Security Instrument or any release of any other security or guaranty for the Loan.

Section 1.4 Obligations Unsecured. The obligations of Guarantor under this Guaranty shall not be secured by the Security Instrument or the other Loan Documents and shall not be obligations of Borrower notwithstanding anything to the contrary in any other Loan Document.

Section 1.5 Payment by Guarantor. If all or any part of the Guaranteed Obligations is or shall give rise to a monetary obligation, and such monetary obligation shall not be punctually paid when due, Guarantor shall, immediately upon demand by Lender, and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity, or any other notice whatsoever, pay in lawful money of the United States, the amount due on the Guaranteed Obligations to Lender at Lender's address as set forth in such demand. Such demand(s) may be made at any time coincident with or after the time for payment of the Guaranteed Obligations.

Section 1.6 No Duty to Pursue Others. It shall not be necessary for Lender (and Guarantor hereby waives any rights which it may have to require Lender), in order to enforce the obligations of Guarantor hereunder, first to (a) make any demand upon or institute suit or exhaust its remedies against Borrower or others liable for amounts due under the Guaranteed Obligations or any other person or entity, (b) institute suit or exhaust its remedies with respect to the Guaranteed Obligations or any person or entity, (c) enforce Lender's rights against any collateral which shall ever have been given to secure any of the Guaranteed Obligations, (d) enforce Lender's rights against any other guarantor of the Guaranteed Obligations, (e) join Borrower or any others liable on the Guaranteed Obligations in any action seeking to enforce this Guaranty or (f) resort to any other means of

obtaining payment of the Guaranteed Obligations. Lender shall not be required to mitigate damages or take any other action to reduce, collect or enforce the Guaranteed Obligations.

Section 1.7 Payment of Expenses. Guarantor shall, immediately upon demand by Lender, pay all reasonable costs and out-of-pocket expenses (including court costs and attorneys' fees, disbursements, costs and expenses) incurred by Lender in the enforcement hereof or the preservation of Lender's rights hereunder and any and all damages, losses, claims, liabilities and related reasonable costs and out-of-pocket expenses, including court costs and attorneys' fees, disbursements, costs and expenses incurred by Lender arising from any breach or failure to timely perform any provisions of this Guaranty by Guarantor.

Section 1.8 Reinstatement. In the event that, pursuant to any controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions (collectively, "Applicable Law"), including any Bankruptcy Law, or any judgment, order or decision thereunder, Lender must rescind or restore any payment, or any part thereof, received by Lender in satisfaction of the Guaranteed Obligations (including pursuant to any settlement entered into by Lender in its discretion), or if Lender elects to do so upon the advice of its counsel, then all obligations under this Guaranty in respect of such payment shall automatically be reinstated as though such payment had been due but not made and shall remain in full force and effect and any prior release or discharge from the terms of this Guaranty given to Guarantor shall be without effect. It is the intention of Lender and Guarantor that Guarantor's obligations hereunder shall not be discharged except by its performance of such obligations and then only to the extent of such performance.

ARTICLE 2

EVENTS AND CIRCUMSTANCES NOT REDUCING OR DISCHARGING GUARANTOR'S OBLIGATIONS

Section 2.1 Events and Circumstances. Guarantor hereby consents and agrees to each of the following, and agrees that Guarantor's obligations under this Guaranty shall not be released, diminished, impaired, reduced or adversely affected by any of the following, and waives any common law, equitable, statutory or other rights (including rights to notice) that Guarantor might otherwise have as a result of or in connection with any of the following:

(a) Modifications. Any renewal, extension, increase, modification, alteration or rearrangement of all or any part of the Guaranteed Obligations, the Loan Documents, or any other document, instrument, contract or understanding between Borrower or Guarantor and Lender, or any other person or entity, pertaining to the Guaranteed Obligations or any failure of Lender to notify Guarantor of any such action.

(b) Adjustment. Any adjustment, indulgence, forbearance or compromise that might be granted or given by Lender to Borrower or Guarantor.

(c) Financial Condition. The commencement, filing or continuation of any voluntary or involuntary bankruptcy, insolvency, reorganization, arrangement, readjustment, assignment for the benefit of creditors, composition, receivership, liquidation, marshaling of assets and liabilities or similar events or proceedings with respect to Borrower, Guarantor or any other person or entity, or any of their respective property or creditors or any action taken by any trustee or receiver or by any court in such proceeding; or the making of a general assignment for the benefit of creditors by Borrower, Guarantor or any other person or entity; or any sale, lease or transfer of any or all of the assets of Borrower, Guarantor or any other person or entity.

(d) Invalidity of Guaranteed Obligations. The invalidity, illegality or unenforceability of all or any part of the Guaranteed Obligations, or any document or agreement executed in connection with the Guaranteed Obligations, for any reason whatsoever, including the fact that (a) the Guaranteed Obligations, or any part thereof, exceeds the amount permitted by law,

(b) the act of creating the Guaranteed Obligations or any part thereof is ultra vires, (c) the officers or representatives executing the Loan Documents or otherwise creating the Guaranteed Obligations acted in excess of their authority, (d) the Guaranteed Obligations violate applicable usury laws, (e) Borrower has valid defenses, claims or offsets (whether at law, in equity or by agreement) which render the Guaranteed Obligations wholly or partially unenforceable or uncollectible from Borrower, other than payment and performance in full of the Guaranteed Obligations, (f) the creation, performance or repayment of the Guaranteed Obligations (or the execution, delivery and performance of any document or instrument representing part of the Guaranteed Obligations or that was executed in connection with the Guaranteed Obligations, or given to secure the repayment of the Guaranteed Obligations) is illegal, uncollectible or unenforceable, or (g) the Loan Documents have been forged or otherwise are irregular or not genuine or authentic, it being agreed that Guarantor shall remain liable hereon regardless of whether Borrower or any other person or entity be found not liable on the Guaranteed Obligations or any part thereof for any reason.

(e) Release of Liability. Any full or partial release of the liability of Borrower on the Guaranteed Obligations, or any part thereof, or of any co-guarantors, or any other person or entity now or hereafter liable therefor, whether directly or indirectly, jointly, severally, or jointly and severally, to pay, perform, guarantee or assure the payment of the Guaranteed Obligations, or any part thereof, it being acknowledged and agreed by Guarantor that (a) Guarantor may be required to pay the Guaranteed Obligations in full without assistance or support of Borrower or any other person or entity and (b) Guarantor has not been induced to enter into this Guaranty on the basis of a contemplation, belief, understanding or agreement that any other person or entity will be liable to pay or perform the Guaranteed Obligations, or that Lender will look to any other person or entity to pay or perform the Guaranteed Obligations.

(f) Other Collateral. The taking or accepting of any other security, collateral or guaranty, or other assurance of payment, for all or any part of the Guaranteed Obligations.

(g) Release of Collateral. Any release, surrender, exchange, subordination, deterioration, waste, loss or impairment (including negligent, willful, unreasonable or unjustifiable impairment) of any collateral, property or security at any time existing in connection with, or assuring or securing payment of, all or any part of the Guaranteed Obligations, or any failure to perfect a lien in any collateral.

(h) Care and Diligence. The failure of Lender or any other person or entity to exercise diligence or reasonable care in the enforcement of its rights under the Loan Documents or the preservation, protection, enforcement, sale or other handling or treatment of all or any part of any collateral, property or security, including but not limited to any neglect, delay, omission, failure or refusal of Lender (a) to take or prosecute any action for the enforcement or collection of any of the Guaranteed Obligations or (b) to foreclose, or initiate any action to foreclose, or, once commenced, prosecute to completion any action to foreclose upon any security therefor, or (c) to take or prosecute any action in connection with any instrument or agreement evidencing or securing all or any part of the Guaranteed Obligations.

(i) Unenforceability. The fact that any collateral, security, security interest or lien contemplated or intended to be given, created or granted as security for the repayment of the Guaranteed Obligations, or any part thereof, shall not be properly perfected or created, or shall prove to be unenforceable or subordinate to any other security interest or lien, it being acknowledged and agreed by Guarantor that it is not entering into this Guaranty in reliance on, or in contemplation of the benefits of, the validity, enforceability, collectability or value of any of the collateral for the Guaranteed Obligations or the priority of any security interest or lien therein.

(j) Offset. Any existing or future offset, claim or defense of Borrower, Guarantor or any other person or entity, against Lender, Borrower or any other person or entity or against payment or performance of the Guaranteed Obligations, whether such offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise, other than the payment and performance of the Guaranteed Obligations in full.

(k) Compliance with Loan Documents. Any failure, omission or delay on the part of Borrower, Guarantor, any other guarantor of the Guaranteed Obligations or Lender to conform or comply with any term of any of the Loan Documents.

(l) Corporate Events. The reorganization, merger or consolidation of Borrower into or with any other person or entity; or any dissolution of Borrower or any other entity; or any changes in the shareholders, partners or members of Borrower or any other person or entity; or any reorganization of Borrower or any other person or entity; or any other change in the relationship between Borrower, Guarantor or any other guarantor of the Guaranteed Obligations, or any termination of such relationship.

(m) Preference. Any payment by Guarantor to Lender that is held to constitute a preference under Bankruptcy Laws, or for any reason Lender is required to refund such payment or pay such amount to any other person or entity.

(n) Other Actions Taken or Omitted. Any other action taken or omitted to be taken with respect to the Loan Documents, the Guaranteed Obligations, or the security and collateral therefor, whether or not such action or omission prejudices Guarantor or any other person or entity or increases the likelihood that Guarantor will be required to pay the Guaranteed Obligations pursuant to the terms hereof.

It is the unambiguous and unequivocal intention of Guarantor that it shall be obligated to pay the Guaranteed Obligations when due, notwithstanding any occurrence, circumstance, event, action, or omission whatsoever, whether contemplated or not contemplated, and whether or not otherwise or particularly described herein, which obligation shall be deemed satisfied only upon the full and final payment and performance of the Guaranteed Obligations.

ARTICLE 3

GUARANTOR WAIVERS

Section 3.1 Waiver of Applicable Laws. Guarantor hereby irrevocably waives the benefit of all principles and provisions of law, statutory or otherwise, which are or might be in conflict with the terms of this Guaranty (and agrees that Guarantor's obligations shall not be affected by any circumstances, whether or not referred to in this Guaranty, which might otherwise constitute a legal or equitable discharge of a surety or a guarantor) and the benefits of any right of discharge under any and all statutes or other laws relating to guarantors or sureties and any other rights of sureties and guarantors.

Section 3.2 Waiver of Notice. Guarantor hereby waives all notices with respect to the Loan Documents and this Guaranty that may be required by statute, rule of law or otherwise to preserve Lender's rights against Guarantor under this Guaranty, including notice of (a) any loan or other indebtedness of Borrower, (b) acceptance of this Guaranty, (c) the execution and delivery by Borrower of any documents or instruments relating to the Loan or in connection with the Property or any collateral, (d) Lender's transfer or disposition of the Guaranteed Obligations, or any part thereof, (e) the occurrence of any default under the Loan Documents, (f) dishonor, (g) notice of intent to accelerate, notice of acceleration, (h) sale or foreclosure (or posting or advertising for sale or foreclosure) of any collateral under the Loan Documents, (i) protest, proof of non-payment or default by Borrower or any other guarantor of the Guaranteed Obligations and (j) any other action at any time taken or omitted by Lender, and, generally, all demands and notices of every kind in connection with this Guaranty or the other Loan Documents.

Section 3.3 Changes in the Guaranteed Obligations. At any time or from time to time and any number of times, without notice to Guarantor and without releasing, discharging or affecting the liability of Guarantor hereunder: (a) the time for payment of the principal of, interest on or other amounts payable under the Loan may be extended or the Loan may be renewed in whole or in part; (b) the rate of interest on or period of amortization of the Loan or the amount of the monthly principal payments payable under the Loan Documents may be modified; (c) the time for Borrower's performance of or compliance with any covenant or agreement contained in any Loan Document, whether presently existing or hereinafter entered into, may be extended or such performance or compliance may be waived; (d) the maturity of the Loan may be accelerated as provided in

the Loan Documents; (e) any or all payments due under the Loan Documents may be reduced; (f) any Loan Document may be modified or amended by Lender and Borrower in any respect, including an increase in the principal amount of the Loan; (g) any amounts held under the Loan Documents may be released; (h) the payment of the principal of, interest on or other amounts payable under Loan or any security for the Loan, or both, may be subordinated to the right to payment or the security, or both, of any other present or future creditor of Borrower; (i) any payments made by Borrower to Lender may be applied to the principal of; interest on or other amounts payable under the Loan in such order and priority as Lender determines; (j) Lender may foreclose on any collateral securing the Loan by one or more judicial or non-judicial sales, accept an assignment of any such collateral in lieu of foreclosure; and (k) any other terms of the Loan Documents may be modified as required by Lender.

ARTICLE 4

REPRESENTATIONS AND WARRANTIES

Section 4.1 Representations and Warranties. To induce Lender to enter into the Loan Documents and extend credit to Borrower, Guarantor represents and warrants to Lender as of the date hereof as follows:

(a) This Guaranty constitutes a legal, valid and binding obligation of Guarantor and is enforceable against Guarantor in accordance with its terms, subject only to applicable bankruptcy, insolvency and similar laws affecting rights of creditors generally, and subject, as to enforceability, to general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law).

(b) The execution, delivery and performance of this Guaranty by Guarantor (i) will not result in any violation of the provisions of any Applicable Laws, (ii) will not conflict with or result in a breach of any of the terms or provisions of, or constitute a default under the terms of any indenture, mortgage, deed of trust, deed to secure debt, loan agreement, management agreement or other agreement or instrument to which Guarantor is a party or to which any of Guarantor's property or assets is subject, and (iii) will not result in or require the creation or imposition of any lien upon or with respect to any of the assets of Guarantor.

(c) Any consent, approval, authorization, order, registration or qualification of or with a governmental authority or other person or entity required for the execution, delivery and performance by Guarantor of this Guaranty has been obtained and is in full force and effect.

(d) Guarantor is an affiliate of Borrower, is the owner of a direct or indirect equity interest in Borrower, and has received, or will receive, direct and indirect material financial and other benefits from the making of this Guaranty.

(e) Guarantor is familiar with, and has independently reviewed books and records regarding, the financial condition of Borrower and is familiar with the value of any and all collateral intended to be created as security for the payment of the Guaranteed Obligations; provided, however, Guarantor is not relying on such financial condition or the collateral as an inducement to enter into this Guaranty.

(f) Neither Lender nor any of its representatives has made any representation, warranty or statement to Guarantor in order to induce Guarantor to execute this Guaranty and Guarantor has not relied on Lender for any guidance or expertise in analyzing the financial or other consequences of the transactions contemplated by this Guaranty or any other Loan Document or otherwise relied on Lender in any manner in connection with interpreting, entering into or otherwise in connection with this Guaranty, any other Loan Document or any of the matters contemplated hereby or thereby.

(g) Guarantor has received a copy of each of the Loan Documents and this Guaranty. Guarantor has read this Guaranty and each of the other Loan Documents and understands the nature and structure of the transactions contemplated by this Guaranty and the other Loan Documents. Guarantor understands the risks inherent in such transactions, including the risk of loss of all or

any part of the Property or of the assets of Guarantor. Guarantor has had the opportunity to consult with its legal counsel prior to entering into the Guaranty and Guarantor availed himself or herself of such opportunity to the extent he or she desired.

(h) There are no actions, suits or proceedings at law or in equity by or before any governmental authority, arbitrator or other entity now pending or, to Guarantor's knowledge, threatened against or affecting Guarantor.

(i) Guarantor has (i) not entered into the transaction contemplated by this Guaranty with the actual intent to hinder, delay or defraud any creditor and (ii) received reasonably equivalent value in exchange for its obligations under this Guaranty. After giving effect to this Guaranty, (x) the fair saleable value of Guarantor's assets will exceed its total liabilities, (y) Guarantor's assets will not constitute unreasonably small capital to carry out its business as conducted or as proposed to be conducted and (z) Guarantor will be able to pay its liabilities as they mature. In the last ten years, Guarantor has not been the subject of or a party to any pending bankruptcy, reorganization, receivership or other insolvency proceeding or any dissolution or liquidation (each, an "Event of Bankruptcy"). Guarantor is not contemplating an Event of Bankruptcy and to Guarantor's knowledge no other person or entity is contemplating an Event of Bankruptcy in respect of Guarantor.

ARTICLE 5

AGREEMENT TO PAY, SUBROGATION AND SUBORDINATION

Section 5.1 Subordination of All Guarantor Claims.

(a) Without limiting any other right that Lender has at law or in equity against Guarantor, if Borrower fails to pay any Guaranteed Obligation when and as due, whether at maturity, by acceleration, after notice of prepayment or otherwise, Guarantor agrees to promptly pay the amount of such unpaid Guaranteed Obligations to Lender in cash. Upon payment by Guarantor of any sums to Lender as provided herein, all of Guarantor's rights of subrogation, exoneration, contribution, reimbursement, indemnity or otherwise arising therefrom against Borrower with respect to such sum shall be subordinate and junior in right of payment to the prior indefeasible payment in full in cash of all monetary Guaranteed Obligations. If any payment shall be paid to Guarantor in violation of the immediately preceding sentence on account of such subrogation, exoneration, contribution, reimbursement, indemnity or similar right, such amount shall be held in trust for the benefit of Lender, segregated from other funds of Guarantor, and promptly paid or delivered to Lender in the same form as so received (with any necessary endorsement or assignment) to be credited against the payment of the Guaranteed Obligations, whether due or to become due, in accordance with the terms of the Loan Documents or to be held as collateral for the Guaranteed Obligations.

(b) Guarantor hereby subordinates any and all debts, liabilities and obligations owed to it by Borrower (including all rights and claims of Guarantor against Borrower as a result of Guarantor's payment of all or part of the Guaranteed Obligations) (the "Subordinated Obligations") to the Guaranteed Obligations as follows:

(i) Guarantor shall not accept, demand or take any action to collect any payment on the Subordinated Obligations without the prior written consent of Lender.

(ii) Guarantor agrees that Lender shall be entitled to receive full payment in cash of all Guaranteed Obligations (including interest accruing during the pendency of any proceeding under Bankruptcy Laws, regardless of whether allowed or allowable in such proceeding ("Post-Petition Interest")) in any proceeding under Bankruptcy Laws against Borrower before Guarantor receives any payment on account of any Subordinated Obligations.

(iii) After the occurrence and during the continuance of any default under the Loan Documents (including the commencement and continuation of any proceeding against Borrower or Guarantor under Bankruptcy Laws), Guarantor shall collect, enforce

and receive payments on the Subordinated Obligations as trustee for Lender and deliver such payments to Lender on account of the Guaranteed Obligations (including Post-Petition Interest), together with any necessary endorsements or other instruments of transfer, without reducing or affecting the liability of Guarantor under this Guaranty in any respect.

(iv) After the occurrence and during the continuance of any default under the Loan Documents (including the commencement and continuation of any proceeding against Borrower or Guarantor under Bankruptcy Laws), Lender is authorized and empowered (but not obligated), in its discretion, (x) in the name of Guarantor, to collect and enforce, and to submit claims in respect of, Subordinated Obligations and to apply any amount so received to the Guaranteed Obligations (including Post-Petition Interest), and (y) to require Guarantor (A) to collect and enforce and to submit claims in respect of, Subordinated Obligations and (B) to pay any amounts received on such obligations to Lender for application to the Guaranteed Obligations (including Post-Petition Interest).

Section 5.2 Payments Held in Trust. In the event that, notwithstanding anything to the contrary in this Guaranty, Guarantor should receive any funds, payments, claims and/or distributions which are prohibited by this Guaranty, Guarantor agrees to hold in trust for Lender an amount equal to the amount of all funds, payments, claims or distributions so received, and agrees that it shall have absolutely no dominion over the amount of such funds, payments, claims and/or distributions so received except to pay such funds, payments, claims and/or distributions promptly to Lender, and Guarantor covenants promptly to pay the same to Lender.

Section 5.3 Liens Subordinate. Guarantor agrees that no liens, security interests, judgment liens, charges or other encumbrances shall exist upon Borrower's assets securing payment of the Subordinated Obligations and any such liens, security interests, judgment liens, charges or other encumbrances which may exist shall be and remain inferior and subordinate to any liens, security interests, judgment liens, charges or other encumbrances upon Borrower's assets securing payment of the Guaranteed Obligations, regardless of whether such encumbrances in favor of Guarantor or Lender presently exist or are hereafter created or attach. Without the prior written consent of Lender, Guarantor shall not (a) exercise or enforce any creditor's right it may have against Borrower, or (b) foreclose, repossess, sequester or otherwise take steps or institute any action or proceedings (judicial or otherwise, including the commencement of, or joinder in, any proceeding under Bankruptcy Laws) to enforce any liens, mortgages, deeds of trust, deeds to secure debt, security interests, collateral rights, judgments or other encumbrances on assets of Borrower held by Guarantor.

ARTICLE 6

MISCELLANEOUS

Section 6.1 Waiver; Amendment. No failure to exercise, and no delay in exercising, on the part of Lender, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right. The rights of Lender hereunder shall be in addition to all other rights provided by law. No modification, amendment, extension, discharge, termination or waiver of any provision of this Guaranty, nor consent to any departure by Guarantor or Lender therefrom, shall in any event be effective unless the same shall be in a writing signed by the party or parties against whom enforcement is sought, and then any such waiver or consent shall be effective only in the specific instance, and for the purpose, for which given. No notice or demand given in any case shall constitute a waiver of the right to take other action in the same, similar or other instances without such notice or demand.

Section 6.2 Notices. All notices given by Guarantor or Lender in connection with this Guaranty must be in writing. Any notice to Guarantor in connection with this Guaranty shall be deemed to have been given to Guarantor when mailed by first class mail or when actually delivered to Guarantor's notice address if sent by other means. Guarantor's notice address shall be the address set forth on the signature page hereto unless Guarantor has designated a substitute notice address by notice to Lender. Guarantor shall promptly notify Lender of Guarantor's change of address. If Lender specifies a procedure for reporting

Guarantor's change of address, then Guarantor shall only report a change of address through that specified procedure. There may be only one designated notice address under this Guaranty at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated in the Definitions Section of the Note unless Lender has designated another address by notice to Guarantor. Any notice in connection with this Guaranty shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Guaranty is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Guaranty.

Section 6.3 Governing Law. This Guaranty shall be governed by federal law and the law of Georgia without regard to the application of choice of law principles that would result in the application of the laws of another jurisdiction.

Section 6.4 Venue. Guarantor agrees that any controversy arising under or in relation to this Guaranty shall be litigated exclusively in Georgia. The state and federal courts and authorities with jurisdiction in Georgia shall have exclusive jurisdiction over all controversies that arise under or in relation to this Guaranty or any other Loan Document with respect to the subject matter hereof. Guarantor irrevocably consents to service, jurisdiction and venue of such courts for any such litigation and waives any other venue to which it might be entitled by virtue of domicile, habitual residence or otherwise.

Section 6.5 WAIVER OF JURY TRIAL. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR (A) AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE ARISING OUT OF THIS GUARANTY OR ANY LOAN DOCUMENT OR THE RELATIONSHIP BETWEEN THE PARTIES AS GUARANTOR AND LENDER THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO SUCH ISSUE TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY GUARANTOR, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL.

Section 6.6 Severability. Wherever possible, each provision of this Guaranty shall be interpreted in such manner as to be effective and valid pursuant to Applicable Law, but if any provision of this Guaranty shall be prohibited by or invalid pursuant to Applicable Law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty.

Section 6.7 Prior Agreements. THIS GUARANTY REPRESENTS THE FINAL AGREEMENT OF GUARANTOR WITH RESPECT TO THE SUBJECT MATTER HEREOF AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES. All prior or contemporaneous agreements, understandings, representations and statements, oral or written, relating to the subject matter hereof are superseded by this Guaranty.

Section 6.8 Defined Terms; Construction.

(a) Capitalized terms used herein without definition shall have the meanings ascribed thereto in the other Loan Documents.

(b) Any reference in this Guaranty to a "Section" shall, unless otherwise explicitly provided, be construed as referring to a Section of this Guaranty.

(c) The Article and Section headings in this Guaranty are included herein for convenience of reference only and shall not constitute a part of this Guaranty for any other purpose.

(d) Any reference in this Guaranty to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time.

(e) Use of the singular in this Guaranty includes the plural and use of the plural includes the singular.

(f) As used in this Guaranty, the term "including" means "including, but not limited to" or "including, without limitation," and is for example only, and not a limitation.

(g) Whenever Guarantor's knowledge is implicated in this Guaranty or the phrase "to Guarantor's knowledge" or a similar phrase is used in this Guaranty, Guarantor's knowledge or such phrase(s) shall be interpreted to mean to the best of Guarantor's knowledge after reasonable and diligent inquiry and investigation.

(h) Unless otherwise provided in this Guaranty, if Lender's approval, consent, designation, determination, selection, estimate, action or decision is required, permitted or contemplated hereunder, such approval, consent, designation, determination, selection, estimate, action or decision shall be made in Lender's sole and absolute discretion.

(i) All references in this Guaranty to a separate instrument or agreement shall include such instrument or agreement as the same may be amended or supplemented from time to time pursuant to the applicable provisions thereof.

(j) The term "Borrower" as used herein shall include any new or successor corporation, association, partnership (general or limited), limited liability company, joint venture, trust or other individual or organization formed as a result of any merger, reorganization, sale, transfer, devise, gift or bequest of Borrower or any interest in Borrower.

Section 6.9 Recitals. The recital and introductory paragraphs hereof are a part hereof, form a basis for this Guaranty and shall be considered prima facie evidence of the facts and documents referred to therein.

Section 6.10 Rights and Remedies. If Guarantor becomes liable for any indebtedness owing by Borrower to Lender, by endorsement or otherwise, other than under this Guaranty, such liability shall not be in any manner impaired or affected hereby and the rights of Lender hereunder shall be cumulative of any and all other rights that Lender may ever have against Guarantor. The exercise by Lender of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy.

Section 6.11 Taxes. Any payments by or on account of any obligation of Guarantor under this Guaranty shall be made without deduction or withholding for any tax; provided, however, that if any law requires deduction or withholding of a tax, such tax shall be deducted and withheld from such payment and paid to the relevant governmental authority in accordance with Applicable Law and the sum payable hereunder shall be increased so that after such deduction or withholding (including deductions or withholdings applicable to additional amounts payable hereunder) Lender receives an amount equal to the sum it would have received had no such deduction or withholding been made; provided, further, that such additional amounts shall not include any taxes measured by net income (however denominated) or franchise taxes imposed on Lender. Guarantor shall promptly indemnify Lender for all such non-excluded taxes (including interest and additions to tax) and related expenses. Guarantor shall promptly deliver evidence satisfactory to Lender of any payments made pursuant to this Section 6.11.

Section 6.12 Assignment. Lender may assign its rights under this Guaranty in whole or in part and, upon any such assignment, all the terms and provisions of this Guaranty shall inure to the benefit of and may be enforced by such assignee to the extent so assigned. Guarantor may not assign its rights, duties and obligations under this Guaranty, in whole or in part, without Lender's prior written consent, and any such assignment shall be deemed void ab initio. The terms used to designate any of the parties herein shall be deemed to include the heirs, legal representatives, successors and assigns of such parties.

Section 6.13 Time is of the Essence. Guarantor agrees that, with respect to each and every obligation and covenant contained in this Guaranty, time is of the essence.

Section 6.14 Credit Report. Guarantor acknowledges and agrees that Lender is authorized, no more frequently than once in any twelve (12) month period, to obtain a credit report (if applicable) on Guarantor, the cost of which shall be paid for by Guarantor. Guarantor acknowledges and agrees that Lender is authorized to obtain a credit score (if applicable) for Guarantor at any time at Lender's expense.

Section 6.15 State-Specific Provisions. Guarantor waives the benefit of the provisions of O.C.G.A. Section 10-7-24.

Section 6.16 Community Property Provision. Not applicable.

The parties executing this Guaranty intend to create an instrument executed under seal.

[NO FURTHER TEXT ON THIS PAGE]

Docusign Envelope ID: F237EFDD-53CB-4019-AC2C-C43C042596E9

IN WITNESS WHEREOF, Guarantor has signed and delivered this Guaranty as of the date first written above, under seal (where applicable). Where Applicable Law so provides, Guarantor intends that this Guaranty shall be deemed to be signed and delivered as a sealed instrument.

GUARANTOR:

0B9ADBE6F96B48B... ____________ (SEAL)
Robert Taylor

Address for Notices to Guarantor:
12561 E Sussex Way
Sanger,, CA 93657

Guarantor represents and warrants that Guarantor is:
[____] single
[__X] married
[____] an entity
Guarantor represents and warrants that Guarantor is a resident of .

**IN THE SUPERIOR COURT OF FAYETTE COUNTY**
**STATE OF GEORGIA**

CIVIL ACTION NUMBER 2025V-1230

Trophy Point Investment Group, LLC

**PLAINTIFF**

**VS.**

Taylor, Kelly Katharine
Taylor, Robert Keith

**DEFENDANTS**

**SUMMONS**

TO: TAYLOR, KELLY KATHARINE

You are hereby required to file with the Clerk of said court and serve upon the plaintiff or plaintiff's attorney, whose name, address and email address are:

**Leslie M Pineyro**
**Jones & Walden, LLC**
**699 Piedmont Ave, NE**
**Atlanta, Georgia 30308**
**lpineyro@joneswalden.com**

an answer to the complaint which is herewith served upon you. You must make your answer within 30 days after service of this summons upon you. This time excludes the day of service. If you fail to answer, the court will issue a default judgment against you for the relief sought in the complaint.

If this action pertains to a Protective Order, the answer is to be filed and served on or before the scheduled hearing date attached.

**This 29th day of December, 2025.**

Clerk of Superior Court

Sheila Studdard, Clerk
Fayette County, Georgia

**IN THE SUPERIOR COURT OF FAYETTE COUNTY**
**STATE OF GEORGIA**

CIVIL ACTION NUMBER 2025V-1230

Trophy Point Investment Group, LLC

**PLAINTIFF**

**VS.**

Taylor, Kelly Katharine
Taylor, Robert Keith

**DEFENDANTS**

**SUMMONS**

TO: TAYLOR, ROBERT KEITH

You are hereby required to file with the Clerk of said court and serve upon the plaintiff or plaintiff's attorney, whose name, address and email address are:

**Leslie M Pineyro**
**Jones & Walden, LLC**
**699 Piedmont Ave, NE**
**Atlanta, Georgia 30308**
**lpineyro@joneswalden.com**

an answer to the complaint which is herewith served upon you. You must make your answer within 30 days after service of this summons upon you. This time excludes the day of service. If you fail to answer, the court will issue a default judgment against you for the relief sought in the complaint.

If this action pertains to a Protective Order, the answer is to be filed and served on or before the scheduled hearing date attached.

**This 29th day of December, 2025.**

Clerk of Superior Court

Sheila Studdard, Clerk
Fayette County, Georgia